IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TRAVONCE RASHAWN BACKIE, | ) | CASE NO. 1:13-cv-00507 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| ERNIE MOORE, Warden, | ) | KATHLEEN B. BURKE |
| | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

Petitioner Travonce Rashawn Backie ("Petitioner" or "Backie"), acting *pro se*, filed this

habeas corpus action pursuant to 28 U.S.C. § 2254 ("Petition").  Doc. 4.  Backie challenges the

constitutionality of his conviction and sentence in *State v. Backie*, Case No. 2010CR1821A

(Stark County).  Doc. 4.   A Stark County jury found Backie guilty of aggravated burglary and

attendant firearm specification.[1]  Doc. 9-5, Doc. 9-7.  The trial court sentenced Backie to a total

of 13 years in prison – 10 years for the aggravated burglary and 3 years for the firearm

specification.[2]  Doc. 9-7, pp. 3-4.[3]

---

[1] Backie was also indicted on one count of aggravated robbery with a firearm specification.  Doc. 9-2, 9-12, p.2.
The jury found Backie not guilty of that count.  Doc. 9-6, Doc. 9-7.

[2] Backie is also incarcerated for drug trafficking and possession of drugs stemming from another case.
*See* http://www.drc.state.oh.us/OffenderSearch/details.aspx?id=A600722&pg=x (last visited March 31, 2015);
*http://www.starkcountycjis.org/starkcrt/summary_frame?pass_case_number=2010CR1422&pass_case_type=CR*
(last visited March 31, 2015) (relating to Stark County Case No. 2010CR1422).  The trial court ordered that
Backie's sentence in Case No. 2010CR1821A (the subject of the instant case) be served consecutive to his sentence
in Case No. 2010CR1422.  Doc. 9-7, p. 4. Backie is only challenging his conviction and sentence in Case NO.
2010CR1821A.  Doc. 4.

[3] Page number references refer to the page number for the cited ECF Doc.

This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.  Doc. 7.  As set forth below, Backie's Petition is barred by the statute of limitations and the two Grounds asserted in the Petition are procedurally defaulted.[4]  Accordingly, the undersigned recommends that Backie's Petition (Doc. 1) be **DISMISSED**.

## I.     Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct.  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008) *cert. denied,* 129 S. Ct. 2878 (2009). The Ohio Court of Appeals summarized the facts underlying Backie's conviction as follows:

> {¶ 3} Shortly after eight o'clock during the night of September 20, 2010, Samantha Coons was preparing to go to bed inside her Canton residence. Ernestine Corinda Mullen, a neighbor who needed a place to stay temporarily, was asleep downstairs, and Coons had just put her young toddler to bed with his father, Dennis Knight. Knight was Coons's boyfriend and was already asleep in their bedroom. Mullen was asleep downstairs and was awaken by a knock on the back door. As she went to the back door, Mullen saw the door being kicked opened and three masked men rush inside. Mullen turned to run away and to alert Knight, but was struck in the back of the head and knocked out.
>
> {¶ 4} Coons heard the door being kicked in and glass breaking, and thought it might be her dog getting into some plates left on the dining room table. She therefore went to the top of stairs and yelled at the dog. The dog, which was in the bedroom under the bed, began barking.
>
> {¶ 5} Coons then saw three masked men come up the stairs, so she ran back into the bedroom and attempted to shut the door and lock it. The men, however, were able to overpower her, and come into the bedroom. As the men entered, they shouted repeatedly that they were the Canton police. Afraid for herself and her child, Coons started fighting with the first man who entered the bedroom. During the struggle with this man, Coons was able to pull down the bandana "do-rag"

---

[4] Moreover, a portion of Ground One and the entirety of Ground Two contain claims that are not cognizable on federal habeas review.

that covered his face. Coons immediately recognized this intruder as "Woody," who is William Appis. Coons shouted out his name, and Woody turned and fled the scene. While Coons was struggling with Woody, the other two men attended to Knight.

{¶ 6} Awakened from his sleep, Knight immediately saw an automatic handgun stuck in his face by one of the masked men, who then proceeded to strike him a couple of times in the head with the barrel of the gun. The other masked intruder was armed with a Taser, and was using it on the dog. Both men demanded to know where the money was hidden. As the man armed with the gun attended to Knight, the other man rifled through the night stand drawers looking for money. He eventually dumped out Coons's purse and took the $350.00 that Coons had saved for Christmas shopping. As the two men backed up to exit the room, the fan that was in the bedroom blew up the bandana do-rag that was covering the face of the intruder armed with the handgun. A lamp was on in the bedroom, as well as a small nightlight by the bed. Knight immediately recognized this intruder as someone whom he knew Travonce "Tre" Backie, the appellant. Knight knew that appellant and Woody were friends, and so he asked appellant, "How you going to rob me and my girl with my son in the bedroom?"Appellant and the other individual fled from the bedroom.

{¶ 7} Both Coons and Knight believed that Woody knew of the existence of the Christmas money because he was at their house a day or so before this incident. On that occasion Coons had asked Knight for money to pay their bills. Coons had gone to the ATM to make a withdrawal from their account, only to find that there were insufficient funds in the account. The two then discussed the necessity of using the Christmas moneycash that they saved for Christmas shopping- to pay their bills, which was kept upstairs in the bedroom. In addition, they were aware that appellant was a friend of Woody.

{¶ 8} Once the intruders left, Knight and Coons called 911 and checked on the condition of Mullen, who was unconscious downstairs. Knight then called appellant repeatedly, asking why he did it. Appellant responded that he didn't do it, so Knight hung up on him. When the police arrived, both Knight and Coons told the police what had happened, as well as the identity of both appellant and Appis. Appis ("Woody") was a friend of theirs, and appellant had dated Coons's sister.

{¶ 9} Both Appis and appellant had in fact been in their home before. The police later showed Knight a photo array, from which Knight identified appellant as the armed intruder who threatened to shoot him during the robbery.

{¶ 10} Kenneth Higgins, a friend of Coons and Knight, was driving that night over to their residence to visit. He parked his vehicle in the driveway and had just exited his vehicle when he was confronted by two masked men racing from the residence of Coons and Knight. One of the men was wearing a ski mask, while

the other had his face covered with something Higgins could not identify. He did not pay attention to this other masked man since the one with the ski mask was pointing a gun in his face. The men demanded that Higgins give them what he had in his pockets. As Higgins kept his hands up in the air, the unarmed man went through Higgins's pockets and took his wallet and cigarettes. The men then fled towards a neighbor's yard. His wallet was eventually recovered in this neighbor's driveway.

{¶ 11} Appellant presented an alibi defense through the testimony of Ashley Myers. Myers testified that appellant was with her all day on September 20, and did not leave her home until after 8:00 p.m. In addition, William ["Woody"] Appis testified on appellant's behalf, admitting that he (Appis) was one of the intruders, but that appellant was not one of the three men who had invaded the home.

Doc. 9-12, pp. 2-5 (Opinion, Fifth District Ohio Court of Appeals, Case No. 2011-CA-00060);

See also *State v. Backie*, 2011 WL 5446019 (Ohio App. Nov. 7, 2011).[5]

## II.    Procedural Background

A.    **State Conviction and Sentencing**

In January 2011, the Stark County Grand Jury issued an indictment charging Backie with one count of aggravated burglary (O.R.C. § 2911.11(A)(2)) and one count of aggravated robbery (O.R.C. § 2911.01 (A)(1)).  Doc. 9-2, 9-12, p. 2.  Both counts included firearm specifications pursuant to O.R.C. § 2941.145.  Doc. 9-2, Doc. 9-12, p. 2.  Backie entered a not guilty plea. Doc. 9-3.  On January 25, 2011, prior to trial, Backie filed a Notice of Alibi stating that, at the time of the alleged incident, he was with Ashley Myers at her residence.  Doc. 9-4.  On March 2, 2011, the jury found Backie guilty of aggravated burglary and attendant firearm specification and not guilty of aggravated robbery and attendant firearm specification.  Doc. 9-5, Doc. 9-6, Doc. 9-7.  On March 14, 2011, the trial court sentenced Backie to a total of 13 years in prison – 10 years for the aggravated burglary and 3 years for the firearm specification.  Doc. 9-7, pp. 3-4.

---

[5] The facts summarized herein are taken from *State v. Backie*, 2011 WL 5446019, *1-2 (Ohio App. Nov. 7, 2011).

**B.      Direct appeal**

Through new counsel, in March 2011, Backie filed a notice of appeal with the Fifth

District Court of Appeals.  Doc. 9-8, Doc. 9-20, Doc. 9-21.  On July 27, 2011, Backie filed his

appellate brief (Doc. 9-9), raising the following assignments of error:

1. Appellant's convictions were against the manifest weight and sufficiency of
   the evidence.

2. The trial court's sentencing of appellant to maximum and consecutive
   sentences was contrary to law.

Doc. 9-9, pp. 4, 9-15.  On August 29, 2011, the State filed its appellate brief.  Doc. 9-10.  On

November 7, 2011, the Fifth District Court of Appeals issued its opinion affirming the judgment

of the trial court.  Doc. 9-11, Doc. 9-12.

On February 7, 2012, Backie, acting *pro se*, filed a notice of appeal and motion for leave

to file a delayed appeal in the Ohio Supreme Court.  Doc. 9-13, Doc. 9-14.  In his motion for

leave to file a delayed appeal, Backie argued that he had been in protective custody and was

unable to timely file an appeal.  Doc. 9-14, pp. 2, 5.  On March 21, 2012, the Ohio Supreme

Court denied Backie's motion for leave to file a delayed appeal.  Doc. 9-15.

**C.      Delayed Application for Reopening pursuant to Ohio Appellate Rule 26(B)**

On February 24, 2012, Backie, acting *pro se*, filed an application for reopening pursuant

to Ohio App. R. 26(B).  Doc. 9-16, Doc. 9-17.  Backie argued that his appellate counsel was

ineffective for not raising the following assignment of error:

1. The appeal attorney failed to raise a Fourteenth Amendment violation during
   trail state's witness D. Knight, state's only eye-witness gave false testimony.

Doc. 9-16, pp. 2-3.  The State filed a response on April 13, 2012.  Doc. 9-18.  On April 16, 2012, the Fifth District Court of Appeals issued a judgment entry denying Backie's application to reopen (Doc. 9-19) stating in part:

> A review of the filings by the appellant does not show that any extraordinary circumstances have been raised to require a waiver of the time requirement of App.R.26(B).  Appellant simply re-iterates the argument that he made in his direct appeal, i.e., that that the only person to identify him, Dennis Knight was not to be believed because his testimony at trial differed from his statement to the police. As this issue was addressed in his direct appeal, we find that this issue raises "no genuine issue as to whether [he] was deprived of the effective assistance of counsel on appeal ***"
>
> Accordingly, his failure to demonstrate good cause is a sufficient basis for denying his application to reopen.

Doc. 9-19, p. 4 (internal citations omitted).   Backie did not appeal the Fifth District Court of Appeals' April 16, 2012, judgment entry to the Ohio Supreme Court.

**D.     Federal Habeas Corpus**

On March 7, 2013, Backie, acting *pro se*, filed his Petition asserting the two grounds for relief set forth below.  Doc. 4.[6]  On July 23, 2013, Respondent filed a Return of Writ.  Doc. 9. Petitioner has not filed a Traverse.[7]

> **Ground One:** Insufficiency of evidence
>
> **Supporting Facts:** Manifest weight – Didn't have evidence to support conviction used only witnesses, one of the perpertraders said I was not there and I was still convicted.  I was denied right to a fair trial and due process because there was insufficient evidence to sustain a conviction in violation of the 5th & 14th amendments.
>
> **Ground Two:** Due process, excessive punishment

---

[6] Backie's case was originally filed in the Southern District of Ohio on February 28, 2013, and subsequently transferred to the Northern District of Ohio on March 7, 2013.  In his Petition, Backie states that he placed his Petition in the prison mailing system on February 26, 2013.  Doc. 4, p. 14.

[7] The Court advised Backie that he had not timely filed a Traverse and the Court sua sponte provided Backie additional time in which to file a Traverse.  Doc. 11.  Thereafter, Backie moved for and was granted additional time to file a Traverse.  Doc. 12, Doc. 13.  Backie, however, has failed to file a Traverse.

**Supporting Facts:** Sentences was maximum and consecutive and should not have been due to the lack of evidence on states behalf.  I was denied due process and punished excessively in violation of the 5th and 8th Amendments.

Doc. 4, pp. 6-7.

### III.    Law and Analysis

Respondent argues that Backie's Petition is barred from federal habeas review for three reasons: (1) the Petition is untimely and barred by the statute of limitations (Doc. 9, pp. 6-11); (2) the Petition includes non-cognizable claims (Doc. 9, pp. 12-17); and/or (3) the Petition includes procedurally defaulted claims (Doc. 9, pp. 17-23).[8]  Although provided an opportunity to do so, Backie has not responded to Respondent's arguments.

### A.    Standard of Review under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  In particular, the controlling AEDPA provision states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law

---

[8] With respect to the sufficiency of evidence claim in Ground One, Respondent alternatively argues that the claim, if not barred, is without merit.  Doc. 9, pp. 24-34.

or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).  "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599-600 (quoting *Williams*, 529 U.S. at 413).  "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  "The state court's application of clearly established law must be objectively unreasonable." *Id.*

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 131 S. Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).  In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The petitioner carries the burden of proof. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

**B.      AEDPA statute of limitations**

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), 28 U.S.C. § 2244, limits the time within which a person in custody pursuant to the judgment of a state court may file a petition for a federal writ of habeas corpus and provides, in relevant part:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation shall run from the latest of --
>
> > (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).  The statute of limitations is tolled for any period of time in which a properly filed petition for post-conviction relief is pending before the state courts.  *Jurado v. Burt,* 337 F.3d 638, 640 (6th Cir. 2003).  "[A]n application is pending so long as the ordinary state collateral review process is 'in continuance.'"  *Carey v. Saffold*, 536 U.S. 214, 219-220 (2002).  "In other words, until the application has achieved a final resolution through the State's post-conviction procedures, by definition it remains 'pending.'"  *Id.* at 220.  This statutory tolling

provision, however, does not "revive the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run.  Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations."  *Vroman v. Brigano,* *346 F.3d 598, 602 (6th Cir. 20*03) (internal quotations and citation omitted).

1.      **Backie's Petition is untimely under 28 U.S.C. § 2244(d)(1)(A)**

On March 2, 2011, the jury found Backie guilty of aggravated burglary and attendant firearm specification and not guilty of aggravated robbery and attendant firearm specification. Doc. 9-5, Doc. 9-6, Doc. 9-7.  On March 14, 2011, the trial court sentenced Backie to total of 13 years in prison – 10 years for the aggravated burglary and 3 years for the firearm specification. Doc. 9-7, pp. 3-4.   Backie appealed from the final order and sentence entered on March 14, 2011.  Doc. 9-8.  On November 7, 2011, the Ohio Court of Appeals affirmed the judgment.  Doc. 9-11, Doc. 9-12.   Backie had 45 days or, until December 22, 2011, to appeal the Ohio Court of Appeals' judgment to the Ohio Supreme Court.  *See* S.Ct.Prac.R. 7.01(1)(a)(i).  Backie did not file an appeal within that time period.  After the expiration of the time for an appeal, on February 7, 2012, Backie, acting *pro se*, filed a notice of appeal and motion for leave to file a delayed appeal in the Ohio Supreme Court.   Doc. 9-13, Doc. 9-14. On March 21, 2012, the Ohio Supreme Court denied Backie's motion for leave to file a delayed appeal.  Doc. 9-15.

Under 28 U.S.C. § 2244(d)(1)(A), Backie's  one-year statute of limitations began to run when "the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *See* 28 U.S.C. § 2244(d)(1)(A).  Respondent asserts that the direct appeal period for Backie's judgment of conviction expired on December 22, 2011, or 45 days after the Ohio Court of Appeals entered its judgment on November 7, 2011.  Thus, absent tolling,

Backie had one year from that date or, until December 22, 2012, to file his federal habeas petition. *See* 28 U.S.C. § 2244(d)(1)(A).

Backie's Petition was officially filed with the Southern District of Ohio on February 28, 2013. Doc. 1-1, p. 1, Doc. 4, p. 1 (reflecting February 28, 2013, "received" time-stamp , John P. Hehman, Clerk, Cincinnati, Ohio).   However, in his Petition, Backie certified that he placed his Petition in the prison mailing system on February 26, 2013. Doc. 4, p. 14.  "Under the mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials for filing in the federal courts." *Cook v. Stegall,* 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack,* 487 U.S. 266, 273 (1988)).  Therefore, Backie's Petition is deemed filed as of February 26, 2013, approximately two months after the expiration of the statute of limitations.  Absent tolling of the statute of limitations, his Petition is time-barred.

On February 7, 2012, during the running of the above noted statute of limitations, i.e., December 22, 2011, until December 22, 2012, Backie filed a motion for leave to file a delayed appeal.  Doc. 9-14.  Up and until (but not including February 7, 2012), the statute of limitations had run for 46 days.  Backie's filing tolled the statute of limitations until the Ohio Supreme Court denied him leave to appeal on March 21, 2012, but his filing did not restart the statute of limitations.  *See Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001) ("although the filing of the motion for delayed appeal may have tolled the running of the one-year statute, it did not cause the statute to begin running anew when the state court denied the motion"); *see also Kimble v. Gansheimer*, 2009 WL 4676959, *6, n. 2 (N.D. Ohio Dec. 4, 2009) ("The 90 day period for seeking certiorari to the United States Supreme Court does not toll the AEDPA's statute of limitations under § 2244(d)(2).") (relying on *Lawrence v. Florida*, 549 U.S. 327, 332, 337

(2007)).  Thus, the statute of limitations resumed on March 21, 2012, and, Backie had 319 days,[9] or until February 3, 2013, to file his federal habeas petition.[10]  Since Backie did not file his Petition until February 26, 2013, his Petition is untimely under 28 U.S.C. § 2244.

###### 2.  Backie is not entitled to equitable tolling of the statute of limitations

The AEDPA's statute of limitations is subject to equitable tolling.  *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011) (citing *Holland v. Florida*, ___ U.S.___, 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130 (2010)).  Equitable tolling allows courts to review time-barred habeas petitions "provided that 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'"  *Robinson v. Easterling*, 424 Fed. Appx.  439, 442 (6th Cir. 2011), *cert. denied*, ___U.S.___, 132 S.Ct. 456, 181 L.Ed.2d 297 (2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)).  There are two forms of equitable tolling: (1) *traditional* equitable tolling; and (2) *actual innocence* equitable tolling.  As discussed below, a petitioner, by satisfying the *Holland* two-part test, may be entitled to traditional equitable tolling.  Additionally, a petitioner may be entitled to actual innocence equitable tolling.  However, for the reasons set forth below, Backie is entitled to neither form of equitable tolling.

---

[9] 46 days had lapsed before the filing of the motion for delayed appeal, thus leaving 319 days remaining (365 – 46 = 319).

[10] On February 24, 2012, also during the running of the statute of limitations, Backie filed a delayed App. R. 26(B) application to reopen his appeal.  Doc. 9-16, Doc. 9-17.  The Ohio Court of Appeals denied Backie's application finding that Backie had not established good cause for his late filing.  Doc. 9-19.  Although an App. R. 26(B) application is considered a collateral post-conviction procedure, *see Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005), under 28 U.S.C. § 2244(d)(2) only "properly filed"  applications can serve to toll the statute of limitations. Since Backie's App. R. 26(B) application was not timely, it was not "properly filed" for purposes of 28 U.S.C. § 2244(d)(2) and did not serve to toll the running of the statute of limitations.  *See Pace v. DiGuglielmo*, 544 U.S. 408, 412-413, 417 (2005).

### a.  Backie is not entitled to traditional equitable tolling

A habeas petitioner is entitled to equitable tolling only if he establishes that (1) "he has been pursuing his rights diligently;" and (2) "some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 130 S.Ct. at 2562.  Equitable tolling is "applied sparingly" and is evaluated on a case-by-case basis, with the petitioner retaining the "ultimate burden of persuading the court that he or she is entitled to equitable tolling." *Ata v. Scutt,* 662 F.3d 736, 741 (6th Cir. 2011) (internal quotations and citations omitted).  Backie has failed to argue or demonstrate that he should be entitled to traditional equitable tolling.  Moreover, even if Backie could demonstrate that some extraordinary circumstance stood in his way and prevented him from timely filing his federal habeas petition, the record does not demonstrate that Backie has been pursuing his rights diligently.  For example, he failed to timely file an appeal with the Ohio Supreme Court from the Ohio Court of Appeals' November 7, 2011, judgment affirming his conviction and sentence; he failed to timely file an App. R. 26(B) application, he failed to appeal from the Ohio Court of Appeals' denial of his delayed App. R. 26(B), and he failed to file a Traverse in this action.  Accordingly, Backie is not entitled to traditional equitable tolling of the statute of limitations under the *Holland* two-part test.

### b.  Backie  is not entitled to actual innocence equitable tolling

In addition to equitable tolling under the traditional two-part test outlined above, "a petitioner may also be eligible for equitable tolling if he demonstrates actual innocence, so that by refusing to consider his petition due to timeliness the court would cause a fundamental miscarriage of justice." *Patterson v. Lafler*, 455 Fed. Appx. 606, 609 (6th Cir. 2012).  "A valid claim of actual innocence requires '*new* reliable evidence—whether it be exculpatory scientific

evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)) (emphasis supplied).  "The evidence must demonstrate factual innocence, not mere legal insufficiency." *Id.* (citing *Bousley v. United States*, 523 U.S. 614, 623 (1998)).  The Supreme Court recently underscored the fact that "the miscarriage of justice exception . . . applies to a *severely confined category*: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'" *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1933 (2013) (quoting *Schulp*, 513 U.S. at 329) (emphasis supplied).  Backie has failed to argue or demonstrate, nor does the record show, that he is entitled to equitable tolling based on actual innocence.

Accordingly, for the reasons set forth above, the undersigned concludes that Backie's Petition was not timely filed and he is not entitled to equitable tolling of the statute of limitations under either traditional or actual innocence equitable tolling principles.  Thus, the undersigned recommends that the Court dismiss Backie's Petition as barred by the statute of limitations.  Additionally, for the reasons discussed more fully below, the undersigned concludes that Backie's grounds for relief are also barred from federal habeas review because they are procedurally defaulted and/or not cognizable on federal habeas review.

## C.    Grounds One and Two are procedurally defaulted

### 1.  Procedural default standard

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court.  28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action.  28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*,

444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003))

("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not

'fairly presented' to the state courts").  A constitutional claim for relief must be presented to the

state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v.*

*Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

Additionally, a petitioner must meet certain procedural requirements in order to have his

claims reviewed in federal court.  *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th

Cir. 2006).  "Procedural barriers, such as . . . rules concerning procedural default and exhaustion

of remedies, operate to limit access to review on the merits of a constitutional claim."  *Daniels v.*

*United States*, 532 U.S. 374, 381 (2001).  Although procedural default is sometimes confused

with exhaustion, exhaustion and procedural default are distinct concepts.  *Williams v. Anderson*,

460 F.3d 789, 806 (6th Cir. 2006).  Failure to exhaust applies where state remedies are "still

available at the time of the federal petition."  *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107,

125 n.28 (1982)).  In contrast, where state court remedies are no longer available, procedural

default rather than exhaustion applies.  *Williams*, 460 F.3d at 806.

Procedural default may occur in two ways.  *Williams*, 460 F.3d at 806.  First, a petitioner

procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his

claim to the appropriate state court." *Id.*  In *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986),

the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim

is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural

rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether

petitioner failed to comply with that rule; (2) whether the state court enforced the procedural

rule; (3) whether the state procedural rule is an adequate and independent state ground on which

the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)); *see also Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D.Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *see also State v. Moreland*, 50 Ohio St.3d 58, 62 (1990)(failure to present a claim to a state court of appeals constituted a waiver).  "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806.  While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, see *Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review.  *Williams*, 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id.* at 753.  "[T]he existence of cause for a

procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.*  "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

### 2.  Grounds One and Two are procedurally defaulted

Here, although Backie presented to the state court of appeals claims similar to those raised in his Petition, Backie failed to timely appeal to the Ohio Supreme Court and the Ohio Supreme Court denied his motion for delayed appeal.  Doc. 9-15.  Thus, because he did not fairly present his claims at all levels of the state court appellate review process and cannot demonstrate that state court remedies remain available to him to raise the claims that he has presented in his Petition, Backie has procedurally defaulted the grounds raised in his Petition. *See O'Sullivan*, 526 U.S. at 847-848 (finding that petitioner's failure to present his federal habeas claims to the state's highest court in a timely fashion constituted procedural default of those claims); *see also Williams*, 460 F.3d at 806 ("If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted.").

Also, under the *Maupin* analysis, Backie procedurally defaulted the grounds raised in his Petition because he failed to comply with the state procedural rule that required that he timely appeal to the Ohio Supreme Court.  Further, the Ohio Supreme Court enforced its procedural rule when it denied Backie's motion for leave to file a delayed appeal and that denial "constitutes a procedural ruling sufficient to bar federal review." *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004) (finding procedural default where the petitioner failed to timely appeal to the Ohio

Supreme Court and the Ohio Supreme Court subsequently denied a motion for leave to file a delayed appeal).

Accordingly, unless Backie can overcome his procedural default by demonstrating cause and prejudice or a fundamental miscarriage of justice, the grounds in his Petition are barred from federal habeas review. Backie has not filed a Traverse and has presented no argument to this Court as to why his procedural default should be excused. To the extent that Backie would rely on the allegations he made in support of his motion for leave to file a delayed appeal, i.e., that, because of issues with other inmates, he entered protective custody and was unable to timely file an appeal (Doc. 9-14), to demonstrate cause, Backie has not demonstrated that those circumstances are sufficient to support a finding that an *objective factor external* to him impeded his ability to timely file his appeal. *See Coleman*, 501 U.S. at 753. ("'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him.").

For example, in his filing with the Ohio Supreme Court, Backie stated that he learned of the Ohio Court of Appeals' decision on November 10, 2011, three days prior to the alleged incident resulting in his placement in protective custody. Doc. 9-14, p. 2. Thus, he was aware of the Ohio Court of Appeals' decision affirming his convictions and sentence prior to entering protective custody. Further, while in the "hole under P.C.," he was able to file his motion for leave to file a delayed appeal, write to the Ohio Public Defender's office, and receive a response from that office. Doc. 9-14, p. 2. Thus, since his own statements reflect that he was capable of communicating with individuals outside the prison while in protective custody and making filings with the court, his submission made in connection with his motion for leave to file a delayed appeal does not show that his protective custody arrangement impeded his ability to file

18

a timely notice of appeal.[11]  Also, his filing with the Ohio Supreme Court suggests that his continued placement in protective custody was the result of his own choice.  Doc. 9-14, p. 5 (stating he was jumped and was "scared to be out there so I won't get hurt so now till this day I am on P.C. till they move me to another prison.").

Further, to the extent that Backie would attempt to excuse his procedural default on the basis that he is a layman or proceeding *pro se*, any such argument would be unavailing.  *See Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (petitioner's *pro se* status before the Ohio Supreme Court was insufficient to demonstrate cause to excuse petitioner's procedural default). Moreover, even if Backie was able to demonstrate "cause" to excuse his procedural default, he must still demonstrate prejudice and he has failed to present any argument with respect to the "prejudice" prong and none is apparent from the record.

Based on the foregoing, the undersigned concludes that Backie procedurally defaulted both grounds in his Petition and has failed to demonstrate cause or prejudice sufficient to excuse his procedural default.[12]  Accordingly, the undersigned recommends that the Court dismiss Backie's Petition on the basis of procedural default.

---

[11] Backie states that "he was jumped and my things got stolen"  (Doc. 9-14, p. 2) but he does not state what "things" were stolen or claim that whatever was stolen was necessary for filing a timely notice of appeal.

[12] A petitioner may also attempt to overcome a procedural default through a showing of a fundamental miscarriage of justice, i.e., that he is actually innocent.  A claim of actual innocence requires a showing of "new reliable evidence" and requires a showing of factual innocence, not mere legal insufficiency.  *See Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Carter v. Mitchell*, 443 F.3d 517, 538 (6th Cir. 2006) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998) for the proposition that "actual innocence means factual innocence, not mere legal insufficiency") (internal quotations omitted). Backie has not attempted to demonstrate that the procedural default of his grounds for relief should be overcome on the basis that he is actually innocent.

**D.    Ground One and Ground Two contain non-cognizable claims**

**1.   Cognizability**

A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement violates the Constitution, laws or treaties of the United States.  28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)..  Thus, a federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law."  *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *Estelle*, 502 U.S. at 67-68.  A federal court "must defer to a state court's interpretation of its own rules of evidence and procedure when assessing a habeas petition."  *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (internal quotation omitted).  Claims of state law error are not cognizable in federal habeas corpus "unless such error amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution."  *Cristini v. McKee*, 526 F.3d 888, 897 (6th Cir. 2008).

**2.   Ground One and Ground Two contain non-cognizable claims**

Even if not barred by the statute of limitations or procedural default, Respondent argues that Backie's manifest weight of the evidence claim in Ground One and his claims in Ground Two raise issues of state law and are not cognizable on federal habeas review.  Doc. 9, pp. 12-17.

**a.   Ground One – manifest weight of the evidence**

In the supporting fact section of Ground One, Backie appears to include a claim that his conviction was against the manifest weight of the evidence.[13]  Doc. 4, p. 4.  However,  "[a]

---

[13] Backie also appears to include a claim that there was insufficient evidence to support his convictions.  Doc. 1, p. 4.  As noted above, Respondent has presented an argument that the sufficiency of the evidence claim, if not barred

'manifest weight of evidence' claim, which is based on a state law concept that 'is both quantitatively and qualitatively different' from a constitutional due process sufficiency of evidence standard, raises an issue of state law only that is not cognizable in a federal habeas corpus proceeding," *Brown v. Moore*, 2008 WL 4239160, *8 (S.D. Ohio 2008) (citing 28 U.S.C. § 2254(a); *Pulley v. Harris*, 465 U.S. 37, 41 (1998)).  Therefore, the undersigned recommends that the Court dismiss Ground One with respect to Backie's manifest weight of evidence claim as not cognizable on federal habeas review.

### b.  Ground Two

In Ground Two, Backie argues that the trial court's imposition of maximum and consecutive sentences violated his due process rights and constitutes an excessive punishment. Doc. 4, p. 7.

"A challenge to a state court's interpretation and application of Ohio's sentencing laws is not cognizable in a federal habeas corpus action." *Garrett v. Miller*, 2012 WL 3989022, *3-4 (N.D. Ohio Aug. 13, 2012), *report and recommendation adopted*, 2012 WL 3989004 (N.D. Ohio Sept. 11, 2012) (citing *Howard v. White,* 2003 WL 22146139, at *2 (6th Cir. Sept.16, 2003)*; Kipen v. Renico,* 2003 WL 21130033 (6th Cir. May 14, 2003)*; Terry v. Trippett,* 62 F.3d 1418, 1995 WL 469424, at *1 (6th Cir.1995) (TABLE, text in WESTLAW) (citing *Branan v. Booth,* 861 F.2d 1507, 1508 (11th Cir.1988) (per curiam)). Further, a trial court's imposition of consecutive sentences does not implicate federal constitutional concerns.  *See Oregon v. Ice*, 55 U.S. 160, 171 (2009) (consecutive sentences may be imposed without implicating concerns under the Sixth Amendment); *see also Wilkins v. Warden, Chillicothe Correctional Inst.*, 2010 WL 5795505, * 19 (S.D. Ohio Sept. 2, 2010), *report and recommendation adopted*, 2011 WL

---

for the reasons argued in the Return of Writ, is without merit. Doc. 9, pp. 24-34.  Since Backie's claims are barred from federal habeas review for multiple reasons, the Court need not address the merits argument presented by Respondent.

549916 (S.D. Ohio Feb. 8, 2011) (indicating that "the Supreme Court has made it clear that consecutive sentences may be imposed without implicating any concerns under the Sixth Amendment.") (citing *Ice*, 555 U.S. 160); *see also Sneed v. Donahue*, 993 F.2d 1239, 1244 (6th Cir. 1993) (concluding that a petitioner's challenge to the aggregation of several sentences involved a matter of state law and was not cognizable in the federal habeas proceeding).

Based on the foregoing, Backie's challenge to the interpretation and application of Ohio's sentencing laws is not cognizable on federal habeas review.  Nor has he shown that the alleged sentencing error amounted to "a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution."[14]  *Cristini v. McKee*, 526 F.3d 888, 897 (6th Cir. 2008).  Accordingly, the undersigned recommends that the Court dismiss Ground Two as not cognizable on federal habeas review.

---

[14] In the state court of appeals, Backie did not clearly present a claim that his sentence constituted cruel and unusual punishment under the Eighth Amendment. *See* Doc. 9-9, pp. 14-15 (Assignment of Error II filed in connection with direct appeal). Thus, the portion of Ground Two claiming a violation of the Eighth Amendment was not fairly presented and is procedurally defaulted because there is no further opportunity for him to raise that claim in state court.  *See Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) ("If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted."). To the extent not defaulted, Backie has not shown that his sentence exceeded the statutory maximum set by statute or that there was an extreme disparity between his sentence and the crime.  Thus, he is unable to demonstrate that the state's interpretation of and imposition of its sentencing statutes resulted in cruel and unusual punishment in violation of federal constitutional law.  *See Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) ("A sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'"); *see also United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000) ("only an extreme disparity between crime and sentence offends the Eighth Amendment").

## IV.     Recommendation

For the reasons stated herein, the undersigned recommends that the Court **DISMISS**

Backie's Petition because: (1) it is barred by the statute of limitations; (2) Ground One is

procedurally defaulted;[15] and (3) Ground Two is procedurally defaulted and/or contains claims

that are not cognizable on federal habeas review.


Dated: April 1, 2015

Kathleen B. Burke
United States Magistrate Judge


## <u>OBJECTIONS</u>

Any objections to this Report and Recommendation must be filed with the Clerk of
Courts within fourteen (14) days after the party objecting has been served with a copy of this
Report and Recommendation.  Failure to file objections within the specified time may waive the
right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir.
1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[15] As discussed above, the manifest weight of the evidence portion of Ground One also is not cognizable on federal
habeas review.